# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

**GREGORY PAUL HACKNEY,**

    **Plaintiff,**

vs.                                                                               **CIVIL ACTION NO. 2:16-04882**

**CAROLYN W. COLVIN**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered June 1, 2016 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 15 and 18.)

The Plaintiff, Gregory Paul Hackney (hereinafter referred to as "Claimant"), protectively filed his applications for Title II and Title XVI benefits on July 17, 2012 (Tr. at 235-237.), alleging disability since January 30, 2009 due to "hypertension, sleep apnea, diabetes, arthritis, cannot read

or write, eye sight, hearing, and back".[1] (Tr. at 266.) His claims were denied on October 26, 2012 (Tr. at 134-138, 139-143.) and again upon reconsideration on December 4, 2012. (Tr. at 149-151, 152-154.) Thereafter, Claimant filed a written request for hearing on January 3, 2013. (Tr. at 155-156.) An administrative hearing was scheduled but continued on March 3, 2014 (Tr. at 74-77.); the new hearing was held on June 4, 2014 before Administrative Law Judge ("ALJ") Peter Jung. (Tr. at 43-73.) The ALJ heard the testimonies of Claimant (Tr. at 52-63.) and Vocational Expert ("VE") Patricia B. Posey. (Tr. at 63-72.) On June 26, 2014, the ALJ entered a decision finding Claimant was not disabled since January 30, 2009, the alleged onset date, through the date of the decision. (Tr. at 21-42.)

The ALJ's decision became the final decision of the Commissioner on April 1, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-5.) On May 31, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

---

[1] In his Disability Report – Appeal, submitted on January 3, 2013, Claimant alleged that since his last Disability Report submitted on November 15, 2012, he experienced "[i]ncreased arthritis pain" and "[d]ifficulty reading and writing." (Tr. at 294.)

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work

activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through March 31, 2014. (Tr. at 26, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

since the alleged onset date of January 30, 2009. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: diabetes mellitus; hypertension; osteoarthritis; diffuse idiopathic skeletal hyperostosis; sleep apnea; obesity; learning disorder; borderline intellectual functioning; and depression. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27, Finding No. 4.) Next, the ALJ found that Claimant had the RFC to perform light work as defined in the Regulations:

> [E]xcept he can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. He can stand and walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. The claimant can balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. The claimant is limited to simple, repetitive, routine tasks and making simple work-related decisions. He can never be exposed to jobs involving hazards, machinery, or heights. (Tr. at 30, Finding No. 5.)

At step four, the ALJ found that Claimant was incapable of performing past relevant work. (Tr. at 35, Finding No. 6.) At step five of the analysis, the ALJ found that having been born on October 8, 1963 and 45 years old, Claimant was a younger individual on the alleged onset date, however, Claimant subsequently changed age category to closely approaching advanced age. (Tr. at 36, Finding No. 7.) The ALJ found that Claimant had a limited education and able to communicate in English. (Id., Finding No. 8.) Employing the Medical-Vocational Rules as a framework, the ALJ determined that Claimant was not disabled though the date last insured, that transferability of job skills was immaterial to the determination of disability, as Claimant's age, education, work experience, and residual functional capacity indicated that there were other jobs existing in significant numbers in the national economy that Claimant could perform. (Id., Finding

Nos. 9 and 10.) On that basis, the ALJ found Claimant was not disabled from January 30, 2009 through the date of the decision. (Tr. at 37, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Issues on Appeal

Claimant's primary ground of error in support of his appeal is that the ALJ erred when he found him literate and has a limited education, without express consideration of the transferability his past relevant work skills, rendering his decision unsupported by substantial evidence. (Document No. 15 at 9.)

Claimant's Background

At the time of the ALJ's decision, Claimant transitioned to a "person closely approaching advanced age". (Tr. at 36.) See 20 C.F.R. §§ 404.1563(d), 416.963(d). He completed the eighth grade in regular classes, but never obtained his general equivalency diploma ("GED"). (Tr. at 52, 267.) He obtained his driver's license when he was sixteen years old after taking a written test. (Tr. at 53.) His prior work experience was as a truck driver from October 1998 through January 2009 (Id.); he obtained his commercial driver's license ("CDL") by passing an oral examination. (Tr. at 56.)

The Relevant Evidence of Record[3]

Disability Report – Adult:

Upon filing applications for disability benefits, a Disability Report – Adult (Form SSA-3368) was completed with the assistance of Shirley A. Frazier, Claimant's friend. (Tr. at 265-273.) Claimant indicated that he was able to speak and understand English but could not read or write more than his name. (Tr. at 265.) He also listed "cannot read or write" as one of the several conditions that limited his ability to work. (Tr. at 266.)

Function Report - Adult:

In his Function Report – Adult, also completed with the assistance of Ms. Frazier, Claimant admitted that he was unable to pay bills, handle a savings account, or use a checkbook/money orders. (Tr. at 277.) He stated he could count change but was unable to "keep track of money". (Id.) He indicated he could not follow written instructions. (Tr. at 279.)

State Agency Psychological Consultant:

On September 26, 2012, Claimant was evaluated by Catherine Van Verth Sayre, M.A. upon

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

referral by the State agency for a psychological consultative examination with intelligence and achievement testing. (Tr. at 408-412.) He reported that he dropped out of school in the eighth grade and received straight F's in school. (Tr. at 409.) Claimant admitted he needed help with his paperwork and could not count money. (Id.) Ms. Sayre noted his signature is "just close scribbles up and down in the mimicry of a signature." (Id.) Ms. Sayre observed Claimant to be oriented times four with a depressed mood and restricted affect. (Id.) Ms. Sayre also noted him to have moderately impaired judgment with poor insight, severely impaired recent memory, and mildly impaired remote memory. (Tr. at 409-410.) Ms. Sayre further described his social functioning to be mildly impaired based on poor eye contact and some difficulty with conversational skills. (Tr. at 410.)

Ms. Sayre administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), which yielded the following scores: Verbal comprehension 70, perceptual reasoning 88, working memory 83, processing speed 74, and full scale IQ 74. (Id.) Ms. Sayre also administered the Wide Range Achievement Test – Fourth Edition (WRAT-4), which revealed Claimant's word reading and spelling abilities to be less than the kindergarten level, and his math computation skills to be at a kindergarten level. (Id.) Ms. Sayre indicated scores from both tests were valid and further explained Claimant "was unable to write his name and could only identify six of the 15 letters presented and write 5 of the 15 letters presented." (Tr. at 411.) Ms. Sayre diagnosed Claimant with Major Depressive Disorder, recurrent severe; learning disorder NOS, and borderline intellectual functioning. (Id.) Ms. Sayre opined Claimant's prognosis was poor, and that he was not capable of managing his own benefits. (Id.)

The Administrative Hearing

Claimant Testimony:

Claimant testified that he completed the eighth grade in a regular classroom and did not take the examination for the GED. (Tr. at 52.) He stated that at age sixteen, he obtained his driver's license through a written test. (Tr. at 53.)

He indicated his past work as a truck driver required him to lift more than 50 pounds while working in the shop, but otherwise, did not require lifting while driving. (Tr. at 54.) He explained he had been hired for this job because his brother was the shop supervisor. (Tr. at 55.) He stated he did not complete an application or any paperwork. (Id.) He admitted he had to take the CDL license examination three times, and on the third time, the questions were read to him. (Tr. at 56.) Claimant also admitted he did not know how to use a measuring tape but learned on the job how to measure for boxes. (Tr. at 57.) He confirmed he drove a truck to "the same place every time" and did not use a map or GPS system because he had learned the route after being shown several times. (Tr. at 56-57.)

Claimant testified that he could read "some." (Tr. at 58.) He indicated he needed assistance with reading letters from Social Security and was unable to complete the Social Security forms independently. (Id.) He said he could not read the newspaper and looked at the pictures at restaurants. (Id.) He admitted he could not read all of the road signs, especially those with long words, but knew what a stop sign was by looking at it. (Tr. at 58-59.) He stated he could write "a little bit," and further explained that he could write his name "halfway," and a letter would not be legible to the recipient. (Tr. at 59.)

Claimant testified his physical impairments included arthritis in both knees, his left shoulder, and the "bends" in his arms. (Id.) He indicated this limited his lifting to 4 or 5 pounds. (Id.) He

stated he had been prescribed pain medication, which helped to keep him going. (Id.) He stated he could reach in all directions with pain as long as the reaching did not involve lifting any amount of weight. (Tr. at 62.)

Claimant stated his low back pain affected his ability to sit and stand, and he confirmed that he had to change positions regularly. (Tr. at 60.) He stated he could sit for approximately 20 minutes and then would need to stand and indicated at that point in the hearing that he felt like he needed to stand. (Id.) He also stated he could stand 15 to 20 minutes before needing to sit again. (Id.) Claimant explained that his legs and ankles swelled when he was sitting, and he needed to elevate them every 30 minutes or so. (Tr. at 61.) He stated medicine helped but his dosage was limited due to other health conditions. (Id.)

Claimant testified his diabetes was typically controlled with medication, however, he experienced dips in his blood sugar levels a couple times a month that caused dizziness. (Tr. at 61-62.)

Vocational Expert ("VE") Patricia B. Posey Testimony:

The VE described Claimant's past work as "a driver of new fire engines" to be at the semi-skilled, medium level of exertion. (Tr. at 66.) The ALJ asked the VE to consider an individual with Claimant's vocational profile and controlling RFC. (Id.) The VE testified the individual would be unable to perform Claimant's past work as a truck driver but would be able to perform other jobs in the national and regional economies, including hand packager (DOT No. 920.687-026), laundry worker (DOT No. 369.687-018), and garment bagger (DOT No. 920.687-018). (Tr. at 66-67.) The ALJ then asked the VE whether an individual who was limited to lifting and carrying 5 pounds occasionally, standing and walking three hours and sitting four hours in an eight-hour day and

could never climb, balance, stoop, crouch, kneel, or crawl could perform work. (Tr. at 67-68.) The VE confirmed no work would be available to an individual with these limitations. (Tr. at 68.)

Claimant's attorney asked the VE for clarification regarding the reading requirements for his past work. (Id.) The VE indicated that this work did not require an individual to read beyond what was needed to pass the CDL exam. (Tr. at 68-71.) The VE also testified that reading was not required in unskilled jobs. (Tr. at 72.)

Claimant's Challenges to the Commissioner's Decision

Claimant argues the ALJ did not abide by the Regulations regarding his literacy. (Document No. 15 at 9-10.) Despite Claimant's testimony that he completed the eighth grade, there was other evidence in the record that showed he was functionally illiterate, and that his numerical grade level was not reflective of his educational abilities; this was noted in the consultative examination report provided by Psychologist Catherine Van Verth Sayre. (Id. at 10-11.) The ALJ's error in not inquiring further into Claimant's literacy was a harmful error that when the Medical-Vocational Guidelines, Rule 202.09, would have directed a finding of disabled. (Id. at 11-12.) Remand is necessary to cure this defect. (Id. at 12.)

The Commissioner responds that the ALJ's decision is based on substantial evidence; Claimant's past relevant work was semi-skilled, even assuming he was illiterate, Grid Rule 202.09, it would not have directed a finding that he was disabled. (Document No. 18 at 4.) Grid Rule 202.09 does not apply here since Claimant's past relevant work was not at the unskilled level, and he did not challenge the finding that his past work was semi-skilled. (Id. at 5.) Even if this Court remanded this matter back for the ALJ's determination that Claimant was illiterate, the result

would be the same, therefore, the ALJ's decision should be affirmed.[4] (Id. at 5-6.)

In reply, Claimant contends that the Regulations are clear that when an ALJ finds a claimant's past relevant work skills are not transferable, the claimant's background will be considered unskilled. See 20 C.F.R. § 404.1565(a); see also SSR 82-41, 1982 WL 31389, at *2 ("The table rules in Appendix 2 are consistent with the provisions regarding skills because the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable"). (Document No. 19 at 2-3.) Finally, Claimant points out that his case is analogous to Glenn v. Colvin, No. 2:14-CV-1116, 2015 WL 4878792 (D.S.C. Aug. 14, 2015) where the court remanded the matter so that the ALJ could determine if the claimant's past work was unskilled work, and therefore disabled under Rule 202.09; Claimant argues that the same remedy should be applied here. (Id. at 3-4.)

Analysis

Literacy Under the Regulations:

Throughout his decision, the ALJ made several references regarding Claimant's literacy levels. Pursuant to 20 C.F.R. §§ 404.1564(b), 416.964(b), "[I]f there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education. Id. §§ 404.1564(b)(3), 416.964(b)(3).

"Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot

---

[4] Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Ward v. Comm'r, 211 F.3d 652, 656 (1st Cir. 2000) (finding that remand to correct an error is not necessary if "it will amount to no more than an empty exercise"); Shinseki v. Sanders, 556 U.S. 396, 409-410 (2009) (finding that a party seeking to overturn an agency's administrative decision normally bears the burden of showing that an error was harmful). (Id. at 5.)

read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Id. §§ 404.1564(b)(1), 416.964(b)(1).

It is noted that pursuant to Rule 202.09 of the Medical-Vocational Guidelines, as a "person closely approaching advanced age", and Claimant is "illiterate or unable to communicate in English", and his previous work experience was "unskilled or none", Claimant would be "disabled." However, given the same criteria, but Claimant's education level is "limited or less – at least literate and able to communicate in English", then the Guidelines direct a finding of "not disabled."

In terms of Claimant's activities of daily living[5], the ALJ noted that Claimant testified that he had his girlfriend read letters for him and helped him fill out Social Security forms. (Tr. at 29.) Claimant reported to Ms. Sayre that he could not read the packages and therefore only ate what he could heat up in the microwave. (Id.) Claimant also reported he was unable to pay bills or handle money. (Id.) The ALJ further noted Claimant's testimony: he completed the eighth grade in regular classes; he did not try to obtain his GED; he obtained his driver's license at 16 having taken a written test; he did not have to do paperwork for his past job; he did not have to read to do his job; he obtained his CDL after the third time when someone read the questions to him; someone must read his mail to him; his girlfriend filled out all his Social Security forms; he cannot read a menu or road signs; he understands most road signs but cannot read the long words; he can write his name and can write "a little", but would not write a letter to someone because the person would never be able to read it. (Tr. at 31.) The ALJ also noted Ms. Sayre's testing that Claimant demonstrated reading and spelling ability less than the kindergarten level and his math capability at the

---

[5] In this area of function, the ALJ found Claimant had mild restrictions. (Tr. at 29.)

kindergarten.2 level. (Tr. at 33.) Based on Claimant's testimony that he finished the eighth grade in regular classes, that he obtained his driver's license at age 16 after taking a written test, and that he obtained a CDL by oral examination, the ALJ concluded he had a limited education under the Regulations. (Tr. at 36.)

The ALJ did not assign a weight to Ms. Sayre's opinion; the ALJ also gave no specific reason for rejecting her assessment that Claimant "was unable to write his name and could only identify six of the 15 letters presented and write 5 of the 15 letters presented." (Tr. at 411.) In fact, the ALJ did not address this finding at all, although under the aforementioned Guidelines, Ms. Sayre's finding constitutes illiteracy. Interestingly, the ALJ gave "great weight" to the opinions of the other two State agency psychological consultants, Ann Logan, Ph.D. and Karl G. Hursey, Ph.D. "because they are consistent with the consultative examiner's clinical findings and the claimant's work history." (Tr. at 34, 35.) Nevertheless, Ms. Sayre's assessment regarding Claimant's literacy was not considered in light of the other evidence of his literacy levels that the ALJ reviewed. Reviewing courts "cannot determine if findings are supported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).

Transferability of Previous Job Skills:

With regard to Claimant's past relevant work, the ALJ accepted the VE's testimony that driving a fire engine or truck requiring a CDL constituted semi-skilled work, due to the "eye-hand coordination and the ability to maneuver the truck – not reading ability" required for the job. (Tr. at 36.) The ALJ found that Claimant was unable to perform his past relevant work, and determined that he was not disabled under Rules 202.18 and 202.11 of the Medical – Vocational Guidelines.

(Tr. at 35, 37.) Transferability of Claimant's job skills were deemed immaterial to the determination of disability, and the ALJ adopted the VE's opinion that Claimant could perform other unskilled jobs. (Tr. at 36, 37.) Claimant has pointed out that this finding was never reconciled with 20 C.F.R. §§ 404.1565(a), 416.965(a): "If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled." Clearly, Claimant's past relevant work as a truck driver, deemed "semi-skilled" by the ALJ, was not transferable to the other jobs indicated by the VE, and accepted by the ALJ: hand packager; laundry worker; and garment bagger. (Tr. at 37.) This falls squarely under Sections 404.1565(a) and 416.965(a), and should have been addressed in the decision.

Altogether, the unresolved conflicting evidence regarding Claimant's literacy levels (specifically, Ms. Sayre's findings along with Claimant's educational and work history and testimony), and the lack of transferability of his prior work skills does not lend substantial evidence supporting the ALJ's decision. From that perspective, the undersigned agrees with Claimant that this case is analogous to Glenn v. Colvin, *supra*, and like the Glenn Court, the undersigned finds that remand is in order to the ALJ to: 1) consider and explain the weight given to Ms. Sayre's opinion that Claimant is illiterate;[6] 2) determine whether Claimant is disabled under Grid Rule 202.09; and 3) determine whether Claimant's job skills are non-transferrable with the understanding that skilled or semi-skilled work history with no transferable skills is equivalent to an unskilled work history under the Grid Rules pursuant to 20 C.F.R. §§ 404.1565(a), 416.965(a)

---

[6] The undersigned recognizes that the consultative examiner in Glenn made an actual finding that the claimant was illiterate under the Regulations, Id. at *5, and in the case at bar, Ms. Sayre does not make such an explicit finding, however, her opinion that the results of the WRAT-IV testing were deemed valid, coupled with her express finding that Claimant was unable to write his name and could not identify all fifteen letters she presented to him during her evaluation, presents strong evidence of Claimant's illiteracy that an explicit finding of same is presumptively reasonable, however, that determination is appropriately within the Commissioner's province.

and Social Security Rule 82-41. Glenn v. Colvin, No. 2:14-CV-1116-RBH, 2015 WL 4878792, at *7 (D.S.C. Aug. 14, 2015).

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's Motion for Judgment on the Pleadings (Document No. 15.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 18.), and **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated above.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: December 23, 2016.

_____
Omar J. Aboulhosn
United States Magistrate Judge